## THE R. G. TOWNSEND.

### (Circuit Court of Appeals, Second Circuit. May 12, 1913.)

#### Nos. 235–238.

COLLISION (§ 71*)—TOW AND ANCHORED VESSEL—NEGLIGENCE OF TUG.

A tug with 28 barges in tow, in 3 tiers, the whole tow being about 1,200 feet long, was proceeding down the Hudson, when some of the barges came into collision with an anchored steamer off Hoboken. The latter had been compelled to anchor a short distance below the anchorage grounds, owing to the breaking down of her machinery, and she had dragged her anchor. It was daytime, and she could be seen for a long distance. *Held*, that the tug was in fault for not sooner discovering that she was not moving, and keeping further away.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. § 71.*

Collision with or between towing vessels and vessels in tow, see note to the John Englis, 100 C. C. A. 581.]

Appeals from the District Court of the United States for the Southern District of New York.

Suits in admiralty by James Sullivan and the St. Paul Fire & Marine Insurance Company by Ormsby M. Mitchell and others, by George Pilbeam, and by John Baker against the steam tug R. G. Townsend; the Cornell Steamboat Company, claimant. Decrees for libelants, and claimant appeals. Affirmed.

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, which held the tug in fault for damages sustained by collision between some of the barges which she had in tow and an anchored vessel.

On October 7, 1910, about 4:30 p. m., the steam tug Townsend was navigating down the Hudson river, a short distance above Castle Point, Hoboken. She had a tow of 28 boats on hawsers of about 70 fathoms, making the total length of the fleet about 1,200 feet. The tide was ebb, running about 2½ miles an hour with a strong northeast breeze, the fleet moving about 5 miles an hour, and near the center of the river. While thus proceeding her pilot saw the Apache, which was at anchor about opposite Ninth street, Hoboken. The latter had anchored a few blocks further up, a little below the anchorage ground, but had dragged her anchor until she reached the place designated. She was visible a long distance up the river. When first perceived·by the pilot of the Townsend, he thought she was moving up river, seeing a ripple at her bow caused by the ebb tide. He did not discover that she was at anchor until he was within about 600 feet of her, when he noticed her anchor chain. He then tried to haul his tow over towards the New York side, but was unsuccessful.

Amos Van Etten, of Kingston, N. Y., for appellant.

Harrington, Bigham & Englar, of New York City (H. S. Harrington, of New York City, of counsel), for appellees Mitchell and others and Pilbeam.

James J. Macklin, of New York City (De Lagnel Berier, of New York City, of counsel), for appellees Sullivan and Baker.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

PER CURIAM. The Apache did not anchor outside of anchorage limits from choice; her machinery broke down, leaving her helpless, and common prudence required her to anchor promptly. She dragged her anchor, but certainly not at any such rate of speed as would lead any one to think she was a moving vessel—moving backwards. The pilot of the Townsend assumed she was moving forward. We know of no obligation which she was under to give any signal, in the daytime and not in fog, to indicate she was at anchor. She was not in fault, and if it be held that the Townsend was free from fault the result would practically be a finding that the collision was an inevitable accident, which it certainly was not.

We think it entirely clear that, if the pilot of the Townsend had watched sharply enough he would have perceived much sooner than he did that the Apache was not going up river. It may be he was not obliged to anticipate that a vessel would be anchored where the Apache was. Yet she was in plain view, and when she became visible he was bound to keep her under observation. There are surely ways, other than the sight of her anchor chain, by which a pilot can determine whether a vessel which he can see clearly a mile away is moving or not. There seems to have been no congestion or other interfering vessels. Apparently the pilot of this large flotilla expected every one who was in his way to get out of it, and neither himself nor the lookout watched this boat sufficiently to see that she was not navigating, and, therefore, was not to be expected to change course to avoid the tug and tow.

The decree is affirmed, with interest and costs.